UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI BANKERS ASSOCIATION, VOLUNTARY EMPLOYEES BENEFICIARY ASSOCIATION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:10CV2221 HEA ) |
| MERITAIN HEALTH, INC., | ) ) |
| Defendants. | ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. no. 7], seeking an Order requiring Defendant to provide test files and production files pursuant to a records request. A hearing on the motion was held on December 1, 2010 wherein arguments were heard. No evidence was presented at the hearing. For the reasons set forth below, the Motion is denied.

## Facts and Background

Plaintiff filed this action in the Circuit Court for the County of St. Louis, Missouri on November 24, 2010. Defendant removed the matter based on the Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Plaintiff's Verified Petition sets forth the following facts:

Plaintiff is an advocate for the banking industry and provides products and services to benefit its members which include commercial banks and savings and loan associations representing over 2,000 banking locations and over 30,000 bank employees in the state of Missouri. Plaintiff was created in 1976 and enables Missouri banks to offer certain benefits to their employees through an entity controlled by Missouri bankers. Plaintiff is a non-profit independent trust, whose eight trustees are appointed by the MBA Board of Directors and provides benefits to employees of members of Plaintiff.

Plaintiff offers a variety of insurance plans to its members, including medical insurance plans, dental plans, term life insurance plans, long-term disability insurance plans, group accident insurance, and felonious assault insurance.

Defendant is a third-party administrator that handles the processing of medical claims and other services for health benefit plans.

Plaintiff and Defendant executed an Administrative Services Agreement, (the Agreement), effective January 1, 2009 wherein the parties agreed that Defendant would provide third party administration services for Plaintiff's self-funded employee welfare benefit plan, (the Plan), in exchange for receiving certain compensation from Plaintiff. The Plan is an employee welfare benefit plan subject

to the provisions of ERISA, and Plaintiff owes a fiduciary duty to the Plan and its participants pursuant to ERISA.

An Amendment to the Agreement, effective January 1, 2010, extended the term of the Agreement to December 31, 2010.  The Agreement, as amended, further provides that the Agreement will automatically renewed for another year unless either party provides the other with at least sixty days written notice prior to the end of the then current term.

On August 13, 2010, Plaintiff notified Defendant in writing that it was terminating the Agreement effective December 31, 2010.  Plaintiff claims it terminated the Agreement because of Defendant's inability to competently perform its duties as third party administrator.  Plaintiff claims Defendant's ineptitude included: an unreasonably long set-up process that resulted in a six week period in which no claims were processed; failure to establish programs to assist in the administration of claims as represented; failure to pay claims in accordance with the terms of the Plan documents; improper calculation of deductibles; improper denial of claims; and a general refusal to recognize the existence of deductible waivers in PPO plans.

On August 17, 2010, Plaintiff sent a letter to Defendant requesting that it cooperate in the transition of certain information (Records Request) to the new

third party administrator for the Plan, an entity called FMH CoreSorce. In its Records Request, Plaintiff directed Defendant to stop processing all claims under the Plan after December 31, 2010 and further directed Defendant to provide, on or before October 15, 2010, certain information to FMH CoreSource that Plaintiff claims was necessary to transition claims processing. Specifically, the Records Request sought: test files for detailed eligibility data, including COBRA participants; test files for detailed claim histories for the past two years; and test files for accumulator data including deductible, coinsurance, copays, covered/eligible charges, annual maximums, and lifetime maximums for the past two years, (the Test Files). The Records Request also sought an electronic file with detailed eligibility data, including COBRA participants by December 3, 2010 (Production File) and a high dollar report and claim detail report for individuals at or over 50% of Plaintiff's specific limit of $250,000 (High Dollar Report).

Defendant did not provide the requested information. On November 18, 2010, Plaintiff demanded that Defendant acknowledge in writing that it would provide the Test Files and High Dollar Report on or before December 1, 2010. Defendant responded to the Demand letter indicating that it would not produce the information sought unless Plaintiff paid certain amounts to Defendant under Section 2.5.1 of the Agreement, as amended. Plaintiff disputes that any funds are

owed Defendant under this provision of the Agreement.

Defendant further contends that this information is available on its website until December 31, 2010. Plaintiff, however, urges that the information contained on the website is not in a format that would enable FMH CoreSource to effectively utilize or access the information so as to be able to process claims effective January 1, 2011. Plaintiff also urges that the website does not provide all of the information necessary to process claims, including, diagnosis codes and accumulator information (such as deductible amounts, out of pocket maximums and annual limits). Further, Plaintiff claims that the information, unlike the information in the Records Request documentation, is inaccurate.

According to Plaintiff, without the requested records, it will suffer imminent and irreparable damage in that it will not be able to timely transition the third party administration responsibilities to FMH CoreSource and, as a result, there will be a delay or lapse in the processing of Plan participants' claims. As such, Plaintiff seeks a temporary restraining order and preliminary injunction which would require Defendant to provide the requested records.

## **Discussion**

In *Dataphase Systems, Inc. v. C.L. Systems, Inc*., 640 F.2d 109 (8th Cir. 1981), the Eighth Circuit Court of Appeals set out the factors for determining if a

temporary restraining order or preliminary injunction should be issued. *Id.* at 113. These factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* The burden of proving that the relief should be awarded rests entirely on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003), citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendant's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. A plaintiff seeking preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374 (2008). Significantly, the Eighth Circuit has consistently held that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *General Motors Corp v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009). An irreparable injury is an injury "of such a nature that money damages alone do not provide adequate relief." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008). If damages will adequately compensate plaintiffs for their injury, injunctive relief is not

appropriate. See *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir.2003).

Moreover, it is also well established that the absence of a finding of irreparable injury is alone sufficient ground for denying a preliminary injunction. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844; see also *General Motors Corp.*, 563 F.3d at 320; *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506- 07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996); "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999) (quoting *Beacon Theatres,* 359 U.S. 500, 506-07). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989).

Plaintiff argues that it and the Plan participants will suffer irreparable harm because Plaintiff and FMH CoreSource need sufficient time to program FMH's system to accept Plaintiff's data so that FMH can begin processing claims. Plaintiff contends that if FMH does not receive the information in the next five

days, it will not be able to begin processing claims on January 1, 2011. If FMH does not begin processing claims on January 1, 2011, Plan participants will be without service, thereby damaging the Plan participants directly and effectively preventing Plaintiff from carrying out its fiduciary obligations to Plan participants under ERISA to prudently administer claims under the Plan. Plaintiff also argues that its reputation and goodwill with Plan participants and its members will be irreparably damaged.

Defendant, on the other hand argues Plaintiff is seeking customized electronic reports in file formats designated by Plaintiff to a competitor without payment under the Agreement, which Defendant claims requires Plaintiff to engage it for run-out claims for a period of six or twelve months following termination. Defendant further argues that there will be no delay in processing claims. Defendant urges that FMH will have the plans available to it and will have the names of the Plan participants so that it will be able to immediately process claims on January 1, 2011.

**Likelihood of Success on the Merits**

Plaintiff argues that it is not required under the Agreement to engage Defendant to provide run-out claims under Section 2.5.1. This Section provides:

because the services provided by Meritain include access to provider
networks owned or arranged for by Meritain, Client agrees to engage
Meritain to provide run-out claims processing for a period of up to
twelve months following the date of expiration of termination of this
Agreement to administer all Claims incurred prior to such date. If the
client elects six (6) months of run-out, the Client agrees to tender to
Meritain immediately available funds in an amount equal to (I) one
hundred percent (100%) of three (3) months of the then-current
Administration due Meritain pursuant to the Agreement based upon
enrollment at the time of termination, to be paid to Meritain on or
before the termination date of this Agreement, (ii) plus an additional
three (3) months of run-out fees at the rate of fifty percent (50%) of
Administration fees as of the termination of this Agreement. If the
Client elects twelve (12) months of run-out, the Client agrees to
tender to Meritain immediately available funds in an amount equal to
(I) one hundred percent (100%) of three (3) months of the then-
current Administration due Meritain pursuant to this Agreement
based upon enrollment at the time of termination, to be paid to
Meritain by the end of the second month after expiration of
termination of this Agreement; and (iii) six (6) months at the rate of
twenty fivepercent (25%)of Administration fees as of the termination
this [sic] Agreement, to be paid to Meritain by the end of the third
month of run-out.

This provision specifically provides that Plaintiff *agreed to engage* Defendant for run-out services. The Agreement does not provide for an election of not engaging Defendant. Thus, Plaintiff's argument that it could choose to not use Defendant at all for run-out services is without merit. The likelihood of success on the merits balances in favor of Defendant.

**Irreparable Harm**

Plaintiff has failed to controvert Defendant's argument that on January 1,

2011, FMH will have the information needed to process claims beginning January 1,2011. Plaintiff did not dispute that the plans and the participants will be available to Plaintiff and FMH. As such, there is nothing before the Court to find that Plaintiff's goodwill and reputation will be irreparably injured since it appears that the Plan participants will not even notice the change in third party administrators. Plaintiff appears to be seeking information in a format that will be immediately usable by FMH, rather than having to engage FMH to format the information for use. Nothing in the agreement requires such a circumstance. As Plaintiff admitted, Defendant's website contains information, but the information is not immediately useable to FMH. Plaintiff has failed to establish irreparable harm requiring injunctive relief. Moreover, Plaintiff has failed to establish that monetary damages would not adequately compensate it in the event Defendant is found to be required to provide the information in the manner requested by Plaintiff. Plaintiff would be then entitled to seek to recover any amount paid to FMH to format the information in a manner useable to FMH.

**Balance of the Harm**

It appears to the Court that this factor favors neither party. If Defendant is required to provide the information in the manner sought by Plaintiff, it will incur expenses; if Defendant does not provide the information, Plaintiff will incur additional expenses.

**Public Interest**

This factor is inextricably intertwined with the discussion of irreparable harm. As there is no evidence that the plan participants will even notice any change in the payment of their claims, Plaintiff's argument that the public interest in expeditious claims processing will be adversely affected is not in jeopardy.

### Conclusion

Defendant does not dispute that the "raw data" belongs to Plaintiff. Plaintiff's Record Request seeks more than raw data; it seeks the data in a form that is immediately useable by Defendant's competitor. Plaintiff has failed to establish that it is entitled to the information in the manner it seeks. As such, Plaintiff has not satisfied its burden of establishing the requisite criteria necessary for the Court to grant the extraordinary remedies of a temporary restraining order and a preliminary injunction.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. 7], is **DENIED.**

Dated this 2nd day of December, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE